Leon **WEISFELD**, on behalf of himself and all other common and Class A stockholders of Spartans Industries, Inc., Plaintiff,

v.

**SPARTANS INDUSTRIES, INC., et al.,** Defendants.

**No. 71 Civ. 781.**

United States District Court, S. D. New York.

Dec. 29, 1972.

Olitt, Friedberg & Kagel, P. C., New York City, for plaintiff Weisfeld.

Hughes, Hubbard & Reed, New York City, for defendants Lybrand, Ross Bros. & Montgomery.

Parker, Chapin & Flattau, New York City, for defendants Spartans Industries, Inc. and Arlen Realty & Development Co.

Pomerantz, Levy, Haudek & Block, New York City, for defendant Bassine.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendants Cohen, Levien & Rose.

## OPINION

TENNEY, District Judge.

This action arises out of the integration of the business of Spartans Industries, Inc. (hereinafter "Spartans") (primarily engaged in the operation of retail stores, including forty-eight Korvette department stores and ninety-eight Spartan department stores) and the real estate development business of Arthur G. Cohen, Marshall Rose, Arthur Levien, Arlen Two Company, Arlen Properties, Inc. and Arlen Shopping Centers, Inc. (hereinafter jointly referred to as the "Arlen Group") into a newly organized corporation, ARDC. Plaintiff's complaint, in two counts, asserts claims under §§ 7, 12, 15, 16 and 17(a) of the Securities Act of 1933 (15 U.S.C. §§ 77g, 77l, 77o, 77p, 77q(a) (1970)) and §§ 10(b), 14 and 18(a) of the Securities Exchange Act of 1934 (15 U.S.C. §§ 78j(b), 78n, 78r(a) (1970)) and the rules and regulations thereunder; § 352–c of the New York General Business Law (McKinney's Consol.Laws, c. 20, 1968); and the common law principles of the State of New York.

Jurisdiction is based upon § 27 of the Securities Exchange Act of 1934 (15 U.S.C. § 78aa (1970)), § 22(a) of the Securities Act of 1933 (15 U.S.C. § 77v(a) (1970)), the federal question and diversity statutes (28 U.S.C. §§ 1331(a) and 1332(a) (1970)) and principles of pendent jurisdiction.

The case is before this Court on plaintiff's motion for class determination pursuant to Fed.R.Civ.P. 23, and on defendants' motion for an order (a) stay-

ing this action pending the determination of an action commenced in the Supreme Court of the State of New York; (b) dismissing Count II of the complaint for failure to state a derivative cause of action pursuant to Fed.R.Civ.P. 23.1; or, in the alternative, (c) staying this action pending the filing by plaintiff of security for expenses, including attorneys' fees, with respect to plaintiff's state law claims asserted derivatively, pursuant to N.Y.Bus.Corp.L. § 627 (McKinney's Consol.Laws, c. 4, Supp.1972); and (d) staying this action pending the filing by plaintiff of (i) security for expenses, including attorneys' fees, pursuant to § 11(e) of the Securities Act of 1933 (15 U.S.C. § 77k(e) (1970)) and § 18(a) of the Securities Exchange Act of 1934 (15 U.S.C. § 78r(a) (1970)), and (ii) a bond for costs pursuant to Local Rule 2 of the Civil Rules of this court.

The complaint alleges that plaintiff is a resident of New Jersey and is a record and beneficial owner of fifty shares of Spartans common stock and that Spartans and ARDC are New York corporations. Defendant Bassine was Chairman of the Board and Chief Executive of Spartans and, through corporations and foundations controlled by him, owned 7.-8% of Spartans outstanding shares entitled to vote on the merger. Defendant Cohen is Bassine's son-in-law, was the principal and dominant partner of Arlen Two Company (hereinafter "Arlen Two"), was in control of Arlen Shopping Centers, Inc. (hereinafter "ASC") and Arlen Properties, Inc. (hereinafter "Arlen Properties"), and owned 12.5% of Spartans outstanding shares entitled to vote on the merger. Defendants Levien and Rose were partners of Arlen Two, were active in Arlen Two, ASC and Arlen Properties and allegedly were dominated by Cohen. Defendant Lybrand, Ross Bros. & Montgomery (hereinafter "Lybrand") is a partnership of certified public accountants and were the accountants for Arlen Two and Ar-

len Properties, and are now the accountants of ARDC.

The complaint further alleges that Cohen and Bassine constituted a single control group, and that they decided to increase their control of Spartans to enable Cohen to transform certain of his non-marketable real estate holdings into a more marketable form and to relieve him of certain financial risks. In order to accomplish these results, Cohen and Bassine allegedly agreed: (a) to cause ARDC to be organized; (b) to cause all but the financially most secure or most promising real estate interests owned by Cohen, Arlen Two and Arlen Properties, together with all of Cohen's liabilities in respect thereof, to be transferred to ARDC in exchange for a majority of outstanding shares of ARDC stock; (c) to cause Spartans, a majority of the outstanding voting stock of which was theretofore owned by the public, to merge into ARDC on a basis which would give Cohen, Bassine, Levien and Rose ownership and control of 53.3% of the outstanding voting shares of ARDC; and (d) by merging Spartans into ARDC, to appropriate for themselves and their associates, including Levien and Rose, substantial liquidation rights and values owned prior to the merger by the public shareholders of Spartans.

On January 22, 1971, a Notice of Special Meeting of Shareholders of Spartans for February 25, 1971, together with a proxy statement, were mailed to all shareholders of record of Spartans as of January 19, 1971. Plaintiff, as a record holder of common stock of Spartans, received this notice and proxy statement on or about January 23, 1971, and filed the within complaint on February 23, 1971.

At the shareholders meeting on February 25, 1971, 3,518,456 common shares and 3,316,614 class A shares of Spartans were voted in favor of the merger, and 141,292 common shares and 78,083 class A shares were voted in opposition; that is, less than 2% of the outstanding

shares opposed the transaction. The merger has since been consummated according to its terms.

Plaintiff claims that the merger of Spartans into ARDC constitutes a manipulative and deceptive device, that Cohen, Bassine and Lybrand caused misleading and deceptive information concerning Arlen Two and Arlen Properties to be given to the Board of Directors of Spartans and to be included in a false and misleading proxy statement dated January 22, 1971, mailed to Spartans stockholders. Plaintiff alleges more specifically that the proxy statement was false and misleading in the following material respects:

(1) The proxy statement advised Spartans shareholders that the proposed merger was in their best interests, but failed to disclose that the proposed merger was, in reality, for the limited personal objectives of Cohen, Bassine, Levien and Rose, which objectives conflicted with the best interests of Spartans and its public shareholders.

(2) The proxy statement failed clearly to disclose that before the merger the Spartans shareholders owned more than a majority of that company's outstanding voting securities, while Cohen and Bassine controlled Spartans only through manipulation of its proxy machinery, but that after the proposed merger, Cohen and Bassine would be able to elect all the directors of ARDC without having to rely on the proxy machinery and without regard to the wishes of the public shareholders of ARDC (including the heretofore public shareholders of Spartans) through their control of Levien, Rose and certain other persons who had been investors with Cohen in real estate ventures and who would be shareholders of ARDC.

(3) The proxy statement did not clearly disclose that Cohen, Levien and Rose contributed to ARDC only a portion of the real estate interests owned by them through Arlen Two or Arlen Properties, and that the properties re-

tained by these individual defendants were the more valuable and desirable properties owned by them.

(4) The proxy statement misleadingly stated that the proposed merger would make available to Spartans' business the ability and expertise of Cohen, Levien, Rose and their partnerships and corporations (including ASC) in the location and development of sites and in the financing and construction of new stores whereas, in fact, pursuant to existing agreements between Spartans and ASC and a by-law of ASC, Spartans already had available to it said services, ability and expertise.

(5) The proxy statement misleadingly and deceptively implied that Cohen, Levien and Rose would devote their full time efforts and services to ARDC after consummation of the merger whereas, in fact, these defendants would continue actively to engage in the conduct of real estate operations separate and independent from the operations of ARDC because of their retention of substantial interests in these other real estate properties and ventures.

(6) The proxy statement falsely stated that the interests of Cohen, Levien and Rose in the real estate properties which they retained would be essentially "passive" in nature, and that these defendants would "make no new investments in real estate or real estate ventures other than in their capacities as officers, directors, employees or security holders of ARDC," when in fact those interests were such that Cohen Levien and Rose necessarily would be required to make additional investments therein through mortgage refinancings, mortgage financings or the performance of existing options or guarantee agreements, none of which were disclosed in the proxy statement.

(7) The proxy statement failed to disclose that Cohen, Levien and Rose had been serving as advisors to and managers for the United States real estate operations of Roosevelt Properties

Fund International S.A., and that these defendants owned substantial interests in the sponsor of said Fund, RPF Advisory S.A., and that their interests in and activities on behalf of RPF Advisory S.A. and said Fund would continue after consummation of the proposed merger and possibly would conflict with the interests of ARDC.

(8) The proxy statement did not disclose that CBWL–Hayden Stone Inc., an investment banking firm of which Sanford I. Weill, a proposed director of ARDC, was Chairman, also was the owner of a substantial interest in RPF Advisory S.A. and was an advisor to Roosevelt Properties Fund International, S.A., and as such had interests which might conflict with the interests of ARDC.

(9) The proxy statement misleadingly and deceptively implied that the Arlen Group owned all the apartment properties reflected in the financial statement whereas, in fact, it was merely a tenant under long-term leases or subleases pursuant to terms which did not, under generally accepted accounting principles, permit such properties to be listed as assets of the lessee, such properties actually being owned by persons who were not members of the Arlen Group.

(10) The proxy statement failed to disclose the existence of substantial contingent liabilities of the Arlen Group in connection with agreements under which the lessors of properties leased to Arlen Properties had the right to compel Arlen Properties, Cohen, Levien, Rose or Arlen Two, and after consummation of the merger, the right to compel ARDC, to purchase properties so leased to the Arlen Group.

Count I of plaintiff's complaint, brought as a class action, seeks to enjoin the merger or, if consummated, seeks its rescision or, in the alternative, damages. Count II, pleaded derivatively, seeks the same relief, except that damages are sought on behalf of Spartans.

*Defendants' Motion for a Stay Pending Determination of the State Court Action*

Since a decision in favor of defendants' motion for a stay of the instant action would make it unnecessary to reach the merits of the other motions presently before this Court, I shall first consider this matter.

By way of background, in November 1968 three separate derivative actions were commenced in the Supreme Court of the State of New York by six Spartans shareholders. These three lawsuits, which were consolidated into a single action, named Spartans, an affiliate of Arlen Two and certain present and former directors of Spartans as defendants. The consolidated complaint alleged that defendants, with knowledge that certain lease agreements between Spartans and corporations owned by Cohen would have to be terminated pursuant to the rules of the New York Stock Exchange, knowingly entered into such leases, and further alleged that Spartans purchased these properties at excess and unfair prices. The state court plaintiffs sought a temporary and permanent injunction, a declaration that an agreement with an affiliate of Arlen Two, consummated in September 1969, be ruled null and void, an accounting for damages and legal fees, and expenses. Defendants' answer denied the principal allegations of the complaint, and discovery proceedings commenced.

In October 1970 one of the plaintiffs in the consolidated action commenced another derivative suit in the same state court against Spartans, certain of its officers and directors, Arlen Properties, and ASC. That complaint sought to enjoin the proposed merger of Spartans and the Arlen Group on the grounds that such merger would be unfair, inequitable and not in the best interests of Spartans and its shareholders.

Thereafter, on January 27, 1971, an order was entered in the New York Su-

preme Court consolidating the October 1970 action with the November 1968 consolidated actions, designating a general counsel for all plaintiffs, directing that a consolidated amended complaint be filed, and enjoining any further actions by Spartans shareholders arising out of the transactions and occurrences which were the subject of the state court consolidated suit.

On or about March 10, 1971, pursuant to the above order, the state court plaintiffs filed a consolidated amended complaint naming as defendants all the directors of Spartans, Arlen Properties and ASC, in addition to the defendants named in the federal action before this Court, with the exception of Lybrand. The consolidated amended state court complaint, in two derivative counts and two representative counts, charges in substance that an agreement dated May 15, 1969, as amended July 15, 1969, pursuant to which Spartans purchased certain real properties from the Arlen Group, and the Agreement and Plan of Reorganization dated January 19, 1971, pursuant to which Spartans merged with ARDC, were entered into solely for the benefit of the Arlen Group, that said agreements were disadvantageous to Spartans, and that defendants conspired fraudulently to induce the Spartans shareholders to approve the aforesaid transactions by false and misleading statements. The state court plaintiffs sought to enjoin the defendants from consummating the proposed merger, or if consummated, seek its rescision and an accounting together with costs and attorneys' fees. Discovery was commenced and an examination before trial of Spartans was scheduled for May 6, 1971.

It should be noted that Leon Weisfeld, the plaintiff in the federal action before me, is not a plaintiff in the consolidated state court suit.

■ In light of the above, defendants move for a stay of this entire federal action pending determination of the state court suit. For the reasons cited *infra,* their motion is denied.

In Landis v. North American Co., 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936), the Supreme Court held:

"[S]uppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else. Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." Id. at 255, 57 S.Ct. at 166. In the instant case, defendants have failed to meet this burden.

The only factors which would support defendants' motion are (1) plaintiff's state statutory and common law claims can be finally adjudicated in the state court action; (2) the state court plaintiffs seek relief similar to that sought by the plaintiff herein; and (3) in view of the fact that plaintiff Weisfeld asserts a derivative claim in the instant suit, a claim inuring to the benefit of Spartans and its shareholders, requiring Spartans to litigate two separate suits will only further deplete the corporate treasury.

In contrast, those factors militating against a stay of the instant suit are as follows:

(1) The plaintiff herein is not a plaintiff in the state court action. Thus, those cases cited by defendants to support their proposition that a stay should be granted here—*see* Rosenfeld v. Black, 445 F.2d 1337 (2d Cir. 1971); Klein v. Walston & Co., 432 F.2d 936 (2d Cir. 1970); Levande v. Roy, 70 Civ. 2916 (S.D.N.Y., Jan. 5, 1971); Johnson v. Espey, 341 F.Supp. 764 (S.D.N.Y., 1970)—are inapposite because in each of those cases plaintiff was the same person in both the federal and state court actions. Here, in contrast, there can be no claim that plaintiff is attempting to

obtain his "day in court" in two courts rather than the one to which he is entitled. Rosenfeld v. Black, *supra,* 445 F. 2d at 1341 n. 5.

(2) Defendant Lybrand herein is not named as a defendant in the state court suit. In Rosenfeld v. Schwitzer Corp., 251 F.Supp. 758 (S.D.N.Y.1966), cited by defendants, this court granted a stay pending determination of a similar suit in an Indiana federal district court on condition that certain parties defendant in the action in this court, who were not named as defendants in the Indiana federal suit, intervene in the Indiana suit, which they had expressed a willingness to do. Here, defendant Lybrand has expressed a willingness to be *served* as a defendant in the state court suit. But since plaintiff Weisfeld has no control over the New York action, it is difficult to see how he can take advantage of Lybrand's willingness to be served as a party defendant.

(3) The action before me involves claims under the federal securities laws which are not, and indeed, could not, be asserted in the state court action. Section 27 of the Securities Exchange Act of 1934 vests the federal courts with exclusive jurisdiction of all claims under the federal securities laws. Although Klein v. Walston & Co., *supra,* 432 F.2d 936, authorizes the district court to stay a federal action pending determination of a state action arising out of the same transaction even where the federal suit asserts claims not cognizable under state law, as noted previously, in *Klein* both the federal and state court actions were instituted by the same plaintiff.

(4) Discovery under the Federal Rules of Civil Procedure is more liberal than discovery under the New York Civil Practice Law and Rules. While Mottolese v. Kaufman, 176 F.2d 301, 304 (2d Cir. 1949), is some authority for this Court to grant a stay on condition that defendants agree to abide by the Federal Rules of Civil Procedure in the state action as far as discovery is concerned,

that case can be distinguished on the ground that, although the federal plaintiff was not a party to the state court action, her attorneys also were the attorneys for a number of the state court plaintiffs, and as such, could exercise some influence over the state court proceedings.

(5) Finally, if the two suits are as similar as defendants claim, they will have little additional work as a result of the federal suit.

■ One last point remains with regard to defendants' motion for a stay. Defendants argue that plaintiff is in violation of the state court's January 27, 1971, order enjoining any further actions by Spartans shareholders arising out of the transactions or occurrences complained of in the state court consolidated suit. It is well settled, however, that a state court cannot enjoin a person from prosecuting an action in a federal court which has jurisdiction over the parties and subject matter. Donovan v. City of Dallas, 377 U.S. 408, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964).

*Defendants' Motion to Dismiss Count II for Failure to State a Derivative Cause of Action*

The basis for this motion is plaintiff's failure to verify the complaint and to allege the absence of collusion in accordance with the mandate of Fed.R.Civ.P. 23.1.

■ I note that the purpose of the rule is to ensure that a shareholder's derivative claim has some basis in fact, i. e., is not a strike suit. In Surowitz v. Hilton Hotels Corp., 383 U.S. 363, 86 S. Ct. 845, 15 L.Ed.2d 807 (1966), the Supreme Court held that noncompliance with formal verification requirements of the federal rules applicable to stockholder actions will not be grounds for dismissal of the complaint where counsel for plaintiff has diligently investigated the possible charges prior to filing the complaint. Here, plaintiff alleges seri-

578

ous irregularities with regard to the merger of Spartans and the Arlen Group into ARDC, which persuades this Court that plaintiff's claims are not in the nature of a strike suit. It appears, rather, that the failure to verify the complaint was merely an oversight on the part of plaintiff's counsel resulting from the necessary haste with which the complaint was prepared. Moreover, the vigor with which defendants have opposed the action belies any inference of collusion between the parties.

■ Under these circumstances, therefore, I shall not dismiss Count II, but shall require that plaintiff file an affidavit verifying his complaint and serve it upon the defendants within ten (10) days of the date of filing of this opinion. Weiss v. Tenney Corp., 47 F. R.D. 283, 288 (S.D.N.Y.1969).

*Defendants' Motion to Stay This Action Pending the Filing by Plaintiff of Security for Expenses with Respect to Plaintiff's State Law Claims Asserted Derivatively*

Defendants argue that since plaintiff ostensibly owned neither 5% nor $50,000 worth of Spartans common stock, he is required to post security for expenses, including attorneys' fees, with respect to his state statutory and common law claims asserted derivatively pursuant to N.Y.Bus.Corp.L. § 627 (McKinney Supp.1972), and that this entire action should be stayed pending the posting of such security. In this regard, defendants demand posting of a $100,000 bond.

■ The law is clear that state security requirements for shareholders' derivative actions should be enforced by the federal courts in both pendent and diversity jurisdiction cases—but as to *state* causes of action only. Phelps v. Burnham, 327 F.2d 812, 814 (2d Cir. 1964); Entel v. Allen, 270 F.Supp. 60, 67 (S.D.N.Y.1967); Mintz v. Allen, 254 F.Supp. 1012, 1014 (S.D.N.Y.1966); Kane v. Central American Mining & Oil,

Inc., 235 F.Supp. 559, 569 (S.D.N.Y. 1964). Defendants' motion for a stay of the *entire* action pending the posting of security for the state law claims asserted derivatively appears to rest on two grounds. First, they argue, plaintiff's complaint fails separately to allege which claims are asserted representatively and which claims, derivatively. Second, defendants argue that plaintiff's allegations that they violated N.Y.Gen'l Bus.L. § 352–c (McKinney 1968), which basically prohibits fraudulent practices in business transactions, include the same claims raised under the federal statutes, and hence, the state and federal claims are inseparable. Thus, they conclude, because the state and federal claims are identical, a stay of the state claims pending filing of security of necessity amounts to a stay of the entire action. I agree. In cases where state derivative and federal claims are inseparable, either because of their nature or because of inartistic pleading, courts have ordered the entire action stayed pending filing of security for the state derivative claims. Fabrikant v. Jacobellis, [1969–1970 Transfer Binder] CCH Fed.Sec.L.Rep. ¶ 92,561, at 98,550 (E. D.N.Y.1969); White v. Driscoll, [1967–1969 Transfer Binder] CCH Fed.Sec.L. Rep. ¶ 92,191, at 96,908 (S.D.N.Y. 1968).

Plaintiff appears not to contest that security is required for his state derivative claims, but argues in his brief that this Court should allow him the opportunity to inspect the Spartans shareholder list at the time of the February 25, 1971, meeting in an effort to persuade other shareholders to join with him in this action to make up the 5% or $50,000 requirement and thus avoid posting security. I agree.

The common practice in New York is that when defendants in a shareholders derivative action move for posting of security under N.Y.Bus.Corp.L. § 627, plaintiff cross-moves for an order compelling the corporation to allow him to

inspect the list of shareholders pursuant to N.Y.Bus.Corp.L. § 624(b) (McKinney 1963), thereby giving him the opportunity to obtain the requisite number of shares to join in the action, and thus obviating the need for posting security. Until fairly recently, federal case law supported the proposition that in a situation such as this, plaintiff was required to post security under the state "substantive" statute, but was not entitled to inspect the shareholders list under the state "procedural" statute. This much-criticized inequitable practice was obliterated by the Supreme Court's decision in Stern v. South Chester Tube Co., 390 U.S. 606, 88 S.Ct. 1332, 20 L.Ed.2d 177 (1968).

*Stern* involved a diversity action by a plaintiff to inspect the books and records of a corporation of which he was a shareholder. The corporation repeatedly had refused him the right to inspect, which right was guaranteed by a Pennsylvania statute providing for a court order to enforce such right. The district court refused to issue an order on the ground that the relief sought was in the nature of a mandamus, and that it therefore lacked jurisdiction. On appeal, the Supreme Court reversed, holding that where petitioner had a right under the substantive law of the state to inspect the records of a corporation in which he was a shareholder, the federal court had jurisdiction to grant relief under its traditional equity power.

This circuit has followed *Stern* and allowed a shareholder-plaintiff a right of inspection even when he has neglected to so move. Lerman v. Tenney, 425 F.2d 236, 238 (2d Cir. 1970). *See also* Weber v. Continental Motors Corp., 305 F.Supp. 404, 407 (S.D.N.Y.1969).

■ New York Business Corporation Law § 624(b) gives any shareholder who has been a shareholder of record for at least six months, or who owns 5% or $50,000 worth of the corporation's shares, a right of inspection. The papers submitted contain no information as to whether plaintiff meets the six-month requirement. However, New York courts have held that § 624(b)'s six-month requirement is not exclusive and that any shareholder, including one not of record, has a common law right to inspect the shareholders list if the inspection is sought in good faith and for a valid purpose, which purpose includes inducing a sufficient number of shareholders to join as co-plaintiffs in a derivative suit to obviate the need for posting security. Sivin v. Schwartz, 22 A.D.2d 822, 254 N.Y.S.2d 914 (1964).

■ In light of the foregoing, defendants' motion for a stay is granted while defendants make available to plaintiff within ten (10) days of the date of filing of this opinion a complete list of shareholders of Spartans as of the February 1971 special meeting. Plaintiff then has sixty (60) days from the date of furnishing of the list to complete joinder of additional plaintiffs, or to post security in the amount of $50,000, or his state statutory and common law derivative claims will be dismissed.

*Defendants' Motion for a Stay Pending Filing by Plaintiff of Security for Expenses Pursuant to § 11(e) of the 1933 Act and § 18(a) of the 1934 Act and a Bond for Costs Pursuant to Local Rule 2*

The gist of defendants' motion appears to be that this action, although concededly not frivolous, was brought by plaintiff in bad faith, so that this Court in its discretion should require plaintiff to post a bond for costs pursuant to § 11(e) of the 1933 Act, § 18(a) of the 1934 Act and Local Rule 2 in the amount of $200,000. In support of their contention, defendants allege the following:

(1) Plaintiff is a former Spartans employee who was involuntarily discharged;

(2) Plaintiff commenced this action in the face of a state court injunction

and is attempting to compel the corporation on whose behalf he sues to engage in multiple litigation raising identical issues;

(3) Plaintiff's personal stake in the action is miniscule in that he holds only a few shares, yet seeks to set aside a multi-million dollar transaction;

(4) Plaintiff originally sought to enjoin the February 25, 1971, shareholders meeting, and now seeks to rescind the January 19, 1970, merger agreement between Spartans and ARDC, and to set aside the merger and reconstitute Spartans as a corporation, yet he made no attempt to obtain a temporary restraining order although the action was commenced two days prior to the meeting and merger consummation;

(5) Plaintiff did not attend the shareholders meeting or vote his shares by proxy;

(6) Plaintiff failed to verify his complaint in accordance with Fed.R. Civ.P. 23.1; and

(7) Plaintiff, in asserting his representative claim, complains of a transaction which tended to cause substantial appreciation in the price of Spartans stock.

These contentions would appear to be without merit. Plaintiff's alleged involuntary discharge might have some bearing on his good faith if the allegations of the complaint were patently frivolous, which defendants appear to concede is not so. Any other view would make it virtually impossible for a former employee to assert a meritorious claim against his former employer, even though plaintiff's ire against such employer might be a factor in causing him to bring suit. Defendants' second contention has been dealt with *supra,* and will not be further discussed here. The fact that plaintiff holds only a small number of Spartans shares has nothing whatever to do with his good faith in bringing the action. The point of allowing representative actions under the securities laws is to allow just such a plaintiff, who as a practical matter would be unable to bring suit if only his personal rights were involved, to vindicate the rights of himself and other members of his class. Defendants make much of the fact that plaintiff failed to attend the February 25, 1971, shareholders meeting or vote his shares by proxy, but the covering letter accompanying the proxy statement mailed to Spartans shareholders, which was signed by defendant Bassine, stated that "[f]ailure to send in your Proxy or to vote in person will have the same effect as voting *against* the proposal." (Emphasis added.) Plaintiff's failure to verify his complaint pursuant to Fed.R. Civ.P. 23.1, is dealt with *supra.* In opposition to defendants' claim that the merger transaction caused no damage to the shareholders because the price of Spartans, and thereafter ARDC, stock substantially appreciated in value during the first few months following the merger, plaintiff claims that thereafter the price of Spartans stock fell dramatically. The only possible evidence of plaintiff's lack of good faith in instituting the within action is the fact that although plaintiff filed his complaint two days before the February 25, 1971, shareholders meeting, he failed to bring on a motion for a temporary restraining order or preliminary injunction to enjoin the merger, although he does request such relief in his complaint. I think that the time which elapsed between plaintiff's receipt of the proxy statement and the date of the shareholders meeting may have been too short for plaintiff to accomplish any more than he did, *i. e.,* retain an attorney, investigate the situation, and draw up the necessary papers to file the action. Under the circumstances, plaintiff's failure to request a temporary restraining order does not appear sufficient to support a charge of bad faith. *See* Mills v. Electric Auto-Lite Co., 396 U.S. 375, 377, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970).

■ Factors to be taken into account by the Court in exercising its discretion whether to require a bond for costs under either the securities acts or local rule 2 are, in addition to the bad faith of the plaintiff in instituting the action, practicalities such as the amount of plaintiff's holdings compared to the amount of relief sought. Dabney v. Alleghany Corp., 164 F.Supp. 28, 33 (S.D.N.Y.1958). Since, however, plaintiff, unless he can induce additional shareholders to intervene in the instant suit, will be required to post a $50,000 bond for his state law claims asserted derivatively in order to proceed with the action, requiring an additional bond for costs for the federal claims would, in this Court's opinion, be excessively burdensome. Therefore, defendants' motion is denied.

*Plaintiff's Motion for Class Determination Pursuant to Fed.R.Civ.P. 23*

Plaintiff seeks to represent:

". . . all persons who are holders of SPARTANS INDUSTRIES, INC. Common or Class A stock, including shareholders of record on or after January 19, 1971, and all present beneficial owners of shares of SPARTANS INDUSTRIES, INC., and those persons who have purchased shares of SPARTANS INDUSTRIES Common or Class A stock subsequent to the first public announcement of the proposed merger of SPARTANS INDUSTRIES, INC. into ARLEN REALTY & DEVELOPMENT CORP. and still hold or have sold shares of Common or Class A stock, and who have been or will be damaged by the actions of the defendants." (Compl. ¶ 2(b).)

Under Fed.R.Civ.P. 23(a), an action may be maintained as a class action if the following prerequisites are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties protect the interests of the class. Plaintiff seeks to maintain his action under Fed.R.Civ.P. 23(b)(3) which requires, in addition to the four elements listed *supra*, that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Plaintiff appears to satisfy the first prerequisite of Rule 23(a) for a class suit, since the number of Spartans shareholders at the time of the merger is alleged to have been several thousand.

With regard to the second and third prerequisites, although the complaint is based upon an allegedly false and misleading proxy statement issued on January 22, 1971, among those plaintiff seeks to represent are those who purchased Spartans securities *after* the record date of January 19, 1971, for the February 25, 1971, shareholders meeting. It is clear that a class which includes purchasers before and after the record date includes persons who acquired their shares under vastly different circumstances. While shareholders of record all received the proxy statement in question, those who became Spartans shareholders after the record date may not even have seen the proxy statement. Thus, this Court cannot say that there are common questions of law and fact and that the claims of the representative party is typical of the claims of the class as plaintiff has defined it.

Moreover, even construing Rule 23(a) liberally—Green v. Wolf Corp., 406 F.2d 291, 298 (2d Cir. 1968), cert. denied, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 563 (2d Cir. 1968)—there would appear to be conflicting interests within the proposed class which would preclude this Court's holding that plaintiff would fairly and adequately protect the interests of all members of the proposed class, as required by Rule

23(a)(4). The first conflict arises out of the fact that plaintiff has held onto his Spartans shares while the great majority of the class he seeks to represent have exchanged their Spartans shares for ARDC shares or have exercised their appraisal rights. While plaintiff primarily seeks rescision of the merger and, only alternatively, damages, those Spartans shareholders in the proposed class who no longer hold their Spartans shares (either having exchanged them for ARDC shares, or having exercised their appraisal rights or sold their exchanged-for ARDC shares since the merger, so that they are in no position to surrender them for Spartans shares were the merger rescinded) probably would be vehemently opposed to rescision and would want damages or nothing. On this issue, I find Judge Mansfield's opinion in Guttmann v. Braemer, 51 F.R.D. 537 (S.D.N.Y.1970), a case on all fours with the instant suit, persuasive. See also Maynard, Merel & Co. v. Carcioppolo, 51 F.R.D. 273 (S.D.N.Y. 1970).

Second, a potential conflict exists between plaintiff, who holds only common shares of Spartans, and the Spartans class A shareholders he seeks to represent. The class A shareholders were required to forego preferential dividend rights aggregating $.60 per share, which rights were by no means insubstantial in relation to the 9⅜ market price as of the date of the announcement of the proposed merger. It is apparent, therefore, that the merger affected the equity status and rights of the class A shareholders differently from those of the common shareholders. This disparity could well mean that class A shareholders would have different preferences regarding the choice between rescision or damages than would the common shareholders. In such circumstances, where the rights and interests of the holders of a different class of securities may not be identical and possibly may be adverse, the courts have refused to permit a class

action. See, e. g., Herbst v. Able, 278 F.Supp. 664, 668 n. 6 (S.D.N.Y.1967).

In view of these problems, and since it is axiomatic that a shareholder cannot represent a class of which he is not a member, this Court cannot grant plaintiff's class action motion under his definition of the class. However, I will grant the motion only insofar as plaintiff will be allowed to represent the following:

All persons who were shareholders of record of Spartans Industries, Inc. common stock on January 19, 1971, who still hold such shares.

Under the above definition of the class, I find that the four prerequisites of Rule 23(a) are satisfied. Moreover, such a class would present common questions of law or fact which would predominate over any questions affecting only individual members, and would make a class action the superior method of adjudicating the controversy, thus satisfying the requirement of Rule 23(b)(3). If plaintiff is successful in inducing other shareholders to join in the action, it may be appropriate at that time for this Court to consider a broader definition of the class, should the new plaintiffs be in such position to represent those which the present plaintiff cannot.

*Summary*

Therefore, and for the foregoing reasons:

(1) Defendants' motion for a stay of this action pending determination of the state court action is denied.

(2) Defendants' motion to dismiss Count II of the complaint for failure to state a derivative cause of action is denied at this time providing that plaintiff files an affidavit verifying his complaint and serves it upon the defendants within ten (10) days of the date of filing of this opinion.

(3) Defendants' motion to stay this action pending the filing by plaintiff of

security for expenses with respect to plaintiff's state law claims asserted derivatively is granted while defendants make available to plaintiff, at plaintiff's expense, within ten (10) days of the date of filing of this opinion a complete list of shareholders of Spartans as of the February 25, 1971, special meeting. Plaintiff then has sixty (60) days from the date of furnishing of the list to complete joinder of additional plaintiffs to make up the 5% or $50,000 requirement of N.Y.Bus.Corp.L. § 627, or to post security in the amount of $50,000, or his state statutory and common law derivative claims will be dismissed.

(4) Defendants' motion for a stay pending the filing by plaintiff of security for expenses pursuant to § 11(e) of the 1933 Act and § 18(a) of the 1934 Act and a bond for costs pursuant to Local Rule 2 is denied.

(5) Plaintiff's motion for class determination pursuant to Fed.R.Civ.P. 23 is granted insofar as he may represent all persons who were shareholders of record of Spartans Industries, Inc. common stock on January 19, 1971, who still hold such shares.

So ordered.